534

HAGEN, Appellant, v. PARKER, Respondent.

*No. 93. Argued March 2, 1970.—Decided April 3, 1970.*
(Also reported in 175 N. W. 2d 483.)

For the appellant there were briefs by *Hale, Skemp, Hanson, Schnurrer & Skemp* of La Crosse, and oral argument by *Robert C. Skemp*.

For the respondent there was a brief by *Johns, Flaherty, Harman & Gillette* of La Crosse, and oral argument by *Daniel T. Flaherty*.

CONNOR T. HANSEN, J. On appeal plaintiff contends defendant is liable, on the basis of common-law negligence, for his failure to protect plaintiff's shipment of fur pelts.

It is undisputed that the defendant is an agent of the Railway Express Agency, Inc., and defendant does not contend that an agent is not liable for common-law negligence in performance of a contract.

The issue in the case on appeal is whether the contract set forth in the Uniform Express Receipt, which allows the Railway Express Agency, Inc., to limit the time within which an action must be brought against it, also applies to the defendant. It is undisputed that the plaintiff did not timely pursue his claim against the Railway Express Agency.

The statute governing the terms of the Uniform Express Receipt is sec. 20 (11) of the Interstate Commerce Act, 49 USCA.[2] The time within which a shipper is per-

[2] 49 USCA, pp. 114, 116, sec. 20 (11), states in part: ". . . *Provided further*, That it shall be unlawful for any such receiving or delivering common carrier to provide by rule, contract, regulation, or otherwise a shorter period for the filing of claims than nine months, and for the institution of suits than two years, such period for institution of suits to be computed from the day

mitted to file notice and suit against the carrier is contained in section 7 of the Uniform Express Receipt given plaintiff:

"7. As conditions precedent to recovery claims must be made in writing to the originating or delivering carrier within nine months after delivery of the property or, in case of failure to make delivery, then within nine months and fifteen days after date of shipment; and suits shall be instituted only within two years and one day after the date when notice in writing is given by the carrier to the claimant that the carrier has disallowed the claim or any part or parts thereof."

The United States Supreme Court has considered the issue now before us in an analogous case construing the Carriage of Goods by Sea Act [3] and the holding in *Herd & Co. v. Krawill Machinery Corp.* (1959), 359 U. S. 297, 79 Sup. Ct. 766, 3 L. Ed. 2d 820, is dispositive of this appeal.

In *Herd*, the petitioner was a stevedoring company engaged by the carrier to load cargo aboard a vessel. During the loading, one of the packages containing a press weighing 19 tons fell into the harbor and was extensively damaged. The bill of lading included a limitation of liability provision for the benefit of the carrier and was within the purview of the Carriage of Goods by Sea Act.[4] The stevedoring company argued their liability

---

when notice in writing is given by the carrier to the claimant that the carrier has disallowed the claim or any part or parts thereof specified in the notice."

[3] Carriage of Goods by Sea Act, 46 U. S. C. secs. 1300–1315; 1304 (5): "(5) Neither the carrier nor the ship shall in any event be or become liable for any loss or damage to or in connection with the transportation of goods in an amount exceeding $500 per package . . . unless the nature and value of such goods have been declared by the shipper before shipment and inserted in the bill of lading."

[4] "30. In consideration of a choice of freight rates having been offered to the shipper by the Carrier, it is agreed that in case of loss of, or damage to . . . goods of an actual value exceeding $500

was limited by the $500 limitation provided in the statute and the parallel provisions in the bill of lading. The district court held that the damage was the result of petitioners' negligence; that the limitation of liability provisions were applicable only to the carrier; and a judgment for $47,992.04 was awarded. The court of appeals affirmed.

The United States Supreme Court unanimously affirmed and rejected the arguments of the stevedore-petitioner. The supreme court held there was nothing in the Carriage of Goods by Sea Act or the bill of lading to indicate any intention of Congress or the parties involved to limit the liability of negligent agents of a carrier.

".... There is, thus, nothing in the language, the legislative history or environment of the Act that expressly or impliedly indicates any intention of Congress to regulate stevedores or other agents of a carrier, or to limit the amount of their liability for damages caused by their negligence. It must be assumed that Congress knew that generally agents are liable for all damages caused by their negligence. Yet Congress, while limiting the amount of liability of 'the carrier [and] the ship,' did not even refer to stevedores or agents of a carrier. 'We can only conclude that if Congress had intended to make such an inroad on the rights of claimants [against negligent agents] it would have said so in unambiguous terms' and 'in the absence of a clear Congressional policy to that end, we cannot go so far.' *Brady v. Roosevelt S.S. Co.*, 317 U. S. 575, 581, 584.

... per package ... the value of such goods, shall be deemed to be $500 per package ... and the Carrier's liability, if any, shall be determined on the basis of a value of $500 per package ... unless the nature of such goods and value higher than $500 per package ... shall have been declared in writing by the shipper ....

"37. This bill of lading shall have effect subject to the Carriage of Goods by Sea Act of the U. S. A. and the Carrier and the ship shall be entitled to all the rights and immunities set forth in said Act." *Herd & Co. v. Krawill Machinery Corp., supra*, page 299 (n).

"Looking to the limitation-of-liability provisions of the bill of lading, we see that they, like Section 1304 (5) of the Act and its legislative history, do not advert to stevedores or agents. Instead they deal only with the 'Carrier's liability' to the shippers. They say that 'the Carrier's liability, if any, shall be determined on the basis of $500 per package.' There is, thus, nothing in those provisions to indicate that the contracting parties intended to limit the liability of stevedores or other agents of the carrier for damages caused by their negligence. If such had been a purpose of the contracting parties it must be presumed that they would in some way have expressed it in the contract. . . ." *Herd & Co. v. Krawill Machinery Corp., supra,* pages 301, 302.

Also discounted was the argument that the stevedore was a "carrier" and liability was limited even though they were not parties nor express beneficiaries of the contract. The supreme court held that contracts and statutes purporting to limit an agent's liability must be strictly construed.

While the *Herd Case* does not deal with the specific statute now before this court, it nevertheless sets forth two guidelines for use in determining whether the liability of an agent has been limited by statute or contract: (1) The common-law liability of an agent for damages caused by his negligence can only be limited by an express agreement between the contracting parties or by statute; and (2) statutes and contracts purporting to limit an agent's liability for negligence are to be strictly construed.

There is no express reference to agents or employees in the Uniform Express Receipt or the Interstate Commerce Act. Therefore, this court can " 'only conclude that if Congress had intended to make such an inroad on the rights of claimants . . . it would have said so in unambiguous terms' " and " 'in the absence of a clear Congressional policy to that end, we cannot go so far.' " *Herd & Co. v. Krawill Machinery Corp., supra,* page 302.

Defendant argues his handling of the shipment (including transporting it from Viroqua to La Crosse) renders him a "carrier" and that he is, therefore, included within the provisions of clause 1 of the Uniform Express Receipt:

"1. The provisions of this receipt shall inure to the benefit of and be binding upon the consignor, the consignee and all carriers handling this shipment and shall apply to any reconsignment, or return thereof."

The term "carrier" as used in sec. 20 (11) of the Interstate Commerce Act is defined in 49 USCA, p. 57, sec. 1 (3):

"Sec. 1, par. (3). **Definitions.** (a) The term 'common carrier' as used in this chapter shall include all pipe-line companies; express companies; sleeping-car companies; and all persons, natural or artificial, engaged in such transportation as aforesaid as common carriers for hire. Wherever the word 'carrier' is used in this chapter it shall be held to mean 'common carrier.'"

This definition of "carrier" gives no indication that employees and agents are to be included therein and a contrary intention can be found in sec. 20 (11):

". . . *Provided further,* That nothing in this section shall deprive any holder of such receipt or bill of lading of any remedy or right of action which he has under the existing law." 49 USCA, p. 116, sec. 20 (11).

Defendant did not sign the Uniform Express Receipt in his own capacity but signed it "for the company"—the consignee—Railway Express Agency. Therefore, when defendant handled the shipment he did so as an employee and defendant was not himself "engaged in such transportation as aforesaid as common carriers for hire." 49 USCA, p. 57, sec. 1 (3).

*Aetna Ins. Co. v. Railway Express Agency* (1947), 80 Ohio App. 30, 74 N. E. 2d 425; and *Northern Fur Co. v. Minneapolis, St. Paul & S. S. M. Ry.* (7th Cir. 1955), 224 Fed. 2d 181, certiorari denied, relied on by the defendant, are distinguishable from the present case. They concern the liability of a principal (railroad) rather than its agent (Railway Express Agency) to third parties when required to transport goods at a lower rate based upon the declared value set forth in the Uniform Express Receipt.

No statute has limited the defendant's liability as an agent or employee, and he is not a party to nor a beneficiary of the contract of carriage between the shipper and the carrier. It follows that defendant's common-law liability for damages alleged to have been caused by his negligence are issues to be resolved by the trier of fact.

*By the Court.*—Judgment reversed.